DISSENTING OPINION



No. 04-05-00834-CR



Robert Walter FISCHER,


Appellant



v.



The STATE of Texas,


Appellee



From the 226th Judicial District Court, Bexar County, Texas


Trial Court No. 2004-CR-0216


Honorable Sid L. Harle, Judge Presiding



Opinion by: Rebecca Simmons, Justice

Dissenting opinion by: Phylis J. Speedlin, Justice


Sitting: Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice

 Rebecca Simmons, Justice


Delivered and Filed: October 24, 2007

 The dissenting opinion issued on September 5, 2007 is withdrawn and this dissenting opinion
is substituted to respond to the modifications made to the majority opinion.

 I disagree with the majority's conclusion that the trial court's admission of the extraneous
offense evidence, i.e., the rifle theft, during the guilt/innocence phase was error. As noted by the
majority, Fischer only challenges "the question of threshold admissibility" that the trial court made
under Rule 104(b). Tex. R. Evid. 104(b). Specifically, Fischer maintains the trial court should not
have admitted evidence of the rifle theft because "no reasonable fact finder" could conclude beyond
a reasonable doubt that Fischer had stolen the missing Cricket rifle from the Wal-Mart at which he
worked based solely on the State's proffer.

 In 1994, our Court of Criminal Appeals held that before a trial court could admit evidence
of an extraneous offense during the guilt/innocence phase of trial, "the trial court must, under rule
104(b), make an initial determination at the proffer of the evidence, that a jury could reasonably find
beyond a reasonable doubt that the defendant committed the extraneous offense." Harrell v. State,
884 S.W.2d 154, 160 (Tex. Crim. App. 1994) (stating that "the proper quantum of proof" to be used
by the trial court in determining the admissibility of extraneous offense evidence is the same as that
used by the jury - i.e., beyond a reasonable doubt, rather than a "clear showing" or a preponderance
of the evidence). This principle was refined in Mitchell v. State, 931 S.W.2d 950 (Tex. Crim. App.
1996), a case involving the admission of extraneous offense evidence during the punishment phase
of trial, (1) in which the court clarified the different functions of the judge and jury with respect to
extraneous offense evidence. "Consequently, we find that the trial court is deemed the authority on
the threshold issue of admissibility of relevant evidence during the punishment phase of a trial, while
the jury, as the 'exclusive judge of the facts,' i.e. finder of fact, determines whether or not the burden
of proof for those offenses presented has been satisfied by the party offering the evidence." Id. at
953.

 In reviewing a trial court's decision to admit evidence of an extraneous offense, it is well
established that we apply an abuse of discretion standard. See Harrell, 884 S.W.2d at 161 n.14
(citing Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)); see also Wheeler v.
State, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). In fact, the Montgomery court spoke at length
when establishing the guidelines for reviewing a trial court's ruling on Rule 404(b) evidence:

 ... appellate courts uphold the trial court's ruling on appeal absent an
'abuse of discretion.' That is to say, as long as the trial court's ruling
was at least within the zone of reasonable disagreement, the appellate
court will not intercede. The trial court's ruling is not, however,
unreviewable. Where the appellate court can say with confidence that
by no reasonable perception of common experience can it be
concluded that proffered evidence has a tendency to make the
existence of a fact of consequence more or less probable than it would
otherwise be, then it can be said the trial court abused its discretion
to admit that evidence. Moreover, when it is clear to the appellate
court that what was perceived by the trial court as common
experience is really no more than the operation of a common
prejudice, not borne out in reason, the trial court has abused its
discretion.


Montgomery, 810 S.W.2d at 391. Accordingly, as long as the trial court's ruling is within the "zone
of reasonable disagreement" and is not arbitrary or unreasonable, there is no abuse of discretion and
the trial court's ruling should be upheld. Id.

 Here, the State and Fischer made an oral proffer of essentially stipulated evidence concerning
the rifle theft outside the presence of the jury prior to opening statements. The record reveals the
following facts were before the trial court at the time of its ruling on the admissibility of the
extraneous offense evidence: 

 (1) A .22 caliber "Cricket" rifle was missing from the Wal-Mart at which Fischer worked;


 (2) The rifle was removed from the store inventory sometime
between May 20 and June 4, 2003 (the decedent was
murdered on May 26, 2003);


 (3) A .22 caliber rifle bullet was used to cause the death of the
victim, and that bullet was impressed with a rifle barrel with
a right hand twist and "twelve lands and grooves;"


 (4) No .22 caliber rifle in the State's firearm expert database
fit this pattern; and the .22 caliber Cricket type of rifle
missing from the Wal-Mart was not in the State's database;


 (5) The rifle with the serial number next in the series to that of the
missing rifle was located in a Wal-Mart in Florida, and upon test
firing made the same impression on the bullet as the murder weapon
made on the bullet that killed the victim;


 (6) To the State's firearm expert's knowledge, the only kind of gun
that could have ben used to kill the victim was a Cricket .22 caliber
rifle; 


 (7) The only people with access to the rifles at Wal-Mart were the
managers and there existed between nine and fourteen keys to the gun
locker;


 (8) Fischer had a key and had access to the gun locker as an associate
manager; and


 (9) Fischer was seen opening the gun locker "some time" before the murder
and mentioned at the time that he knew there was a "small child's rifle" being
sold by Wal-Mart. 


 At the hearing, Fischer objected to the admission of evidence related to the stolen Cricket
rifle on the basis that it was not relevant and was unfairly prejudicial because "no one puts the rifle
in Mr. Fischer's hand," "we don't know that he's the one that took it," and "we don't know when
it was taken." In making its ruling, the trial judge stated, "[s]o we're doing this based upon what his
[the prosecutor's] good faith belief of the evidence is. If at some point during this trial it turns out
that's not the case ... - then you have an appropriate remedy ... But at this point ... under the 404(b)
proffer, I'll admit it on the case in chief, finding that the probative outweighs the prejudicial." When
defense counsel questioned whether the court was also determining that "the extraneous offense is
admissible beyond a reasonable doubt," the judge replied, "[a]t this time I'm going to say that based
on the proffer. Now, once again, I've left you your outlet on that, depending on what the testimony
reveals." Thus, the record confirms that the trial court made a threshold decision under Rule 104(b)
to admit the extraneous offense evidence dependent on the fulfillment of a condition of fact, i.e., that
the State prove that Fischer committed the theft of the rifle. See Tex. R. Evid. 104(b); see Harrell,
884 S.W.2d at 160 (stating that in that case the "conditional fact" was whether the appellant
committed the extraneous offenses depicted in the state's exhibit, and stating that, "[i]f appellant
committed the extraneous offense, the evidence is relevant and admissible, provided it is not too
prejudicial and is offered for a proper purpose ... [h]owever, if appellant did not commit the
extraneous offense[s], the evidence is irrelevant and therefore inadmissible"). During trial, the
evidence concerning the theft of the rifle was admitted through several different witnesses'
testimony. There was no further objection by Fischer during trial, or through motion for directed
verdict, raising the State's purported failure to prove that he committed the rifle theft. (2)

 On appeal, Fischer concedes the evidence of the rifle theft is probative of "preparation or
plan" and is not "unfairly prejudicial." See Tex. R. Evid. 404(b), 403; see also Montgomery, 810
S.W.2d at 387 (extraneous offense evidence that meets permissible purposes of Rule 404(b) is
"relevant" beyond tendency to show character conformity and is therefore admissible subject only
to a Rule 403 analysis). However, Fischer stills maintains the State's proffer lacked the necessary
"threshold quantum of proof" for admissibility before the jury. He argues the only evidence the State
produced at the proffer with respect to the missing Cricket rifle was the fact that it was "missing
from the Wal-Mart store inventory near the time of the murder, Mr. Fischer worked at the store, was
one of approximately sixteen [sic] managers who had a key to the store gun bunker, and a fellow
employee recalled that he once had mentioned or expressed interest in that particular gun." Fischer
maintains, and the majority apparently agrees, that based on this "scant evidence," no reasonable fact
finder could conclude beyond a reasonable doubt that he had stolen that firearm, and that it was thus
error for the court to admit it into evidence. After applying the abuse of discretion standard of
review to the trial court's threshold determination as to the admissibility of the evidence, I
respectfully disagree. 

 The dispositive issue appears to be the proper interplay between Harrell's mandate that the
trial court must make an "initial determination" that a jury could reasonably find beyond a reasonable
doubt that the defendant committed the extraneous offense, and an appellate court's mandate to
review a trial court's decision to admit such evidence under an abuse of discretion standard. See
Harrell, 884 S.W.2d at 160, 161-62 n.14. My reading of Harrell and Mitchell, and the subsequent
cases applying them, is that the trial judge, in ruling on the admissibility of the extraneous offense
evidence, does not engage in a weighing of the evidence or a credibility evaluation, which are within
the jury's sole province, but only makes a threshold determination of relevance, i.e., whether a
reasonable fact finder could find the defendant committed the extraneous offense beyond a
reasonable doubt. See Harrell, 884 S.W.2d at 159-60 (contrasting the trial court's duty under Rule
104(a) to make a "preliminary finding" of fact, with its duty under Rule 104(b) to make an "'initial
determination' as to the relevancy of the evidence, dependent 'upon the fulfillment of a condition
of fact'"); see also Mitchell, 931 S.W.2d at 956 (Clinton, J., concurring) (characterizing Harrell as
"acknowledg[ing] that proof of a defendant's culpability for an extraneous crime is not a preliminary
question of fact to be resolved by the trial judge under Rule 104(a), but is a condition of relevancy
to be resolved by the jury under Rule 104(b)"). In turn, on appeal of the trial court's ruling under
Rule104(b), we as a reviewing court do not engage in a re-weighing of the evidence as a form of
sufficiency analysis. Rather, we consider only whether the trial court applied the correct law and
whether its ruling falls outside the zone of reasonable disagreement, i.e., whether its ruling was
arbitrary and without reference to guiding principles. See Montgomery, 810 S.W.2d at 391.

 The majority, while claiming that it is applying an abuse of discretion standard, actually
engages in an improper legal sufficiency analysis, re-weighing the strength of the State's proffer and
superimposing its own judgment over that of the trial court. See id. at 390-91 (rejecting suggestion
that appellate court may substitute its own judgment for that of trial court as to relevance). The
majority acknowledges in a footnote that the Texas Court of Criminal Appeals has held that a no-evidence or legal sufficiency analysis is not the proper standard of review for determining the
relevance, and thus admissibility, of evidence. See Stewart v. State, 129 S.W.3d 93, 96 (Tex. Crim.
App. 2004). However, the majority then notes its belief that a legal sufficiency review is
"instructive," spends the rest of the paragraph explaining the parameters of a legal sufficiency
review, and then proceeds to apply a legal sufficiency analysis to the proffer, ultimately concluding
that, "[a]t the time of the proffer, there was legally insufficient evidence that Fischer committed the
extraneous offense" before holding the trial court "abused its discretion." I strongly disagree that
this constitutes a proper application of the abuse of discretion standard in the context of this case,
and thus will engage in my own abuse of discretion analysis.

 As previously stated, the trial court did apply the correct guiding principle in making its
threshold ruling as to relevance under Rule 104(b). Therefore, I now examine the State's proffer
only to determine whether the court's decision to admit the evidence was arbitrary or capricious. See
Montgomery, 810 S.W.2d at 391. Here, the State proffered circumstantial evidence that Fischer
planned and carried out the theft of the Cricket rifle in order to gain possession of the firearm to
commit the charged murder. Included within the proffer was evidence that the missing Cricket rifle
was taken at or near the time of the murder, and in fact matched the weapon used to commit the
murder. The proffer further establishes that the missing Cricket rifle was kept inside a locked gun
locker at Wal-Mart; therefore, only a limited group of people would have had access to the murder
weapon. In addition, the proffer showed that, in his capacity as a support manager at the Wal-Mart,
Fischer had a key to the gun locker, and thus he had access to the locker and had the opportunity to
steal the rifle. Finally, based on his own comments to a witness during the period of time in which
the State believed the weapon was stolen, Fischer had personal knowledge of the Cricket rifle's
existence and expressed an interest in it before the murder.

 Although the proffer does not directly place the missing rifle in Fischer's hands, the proffer
certainly connects Fischer to the missing gun, and, as such, has a "tendency to make the existence
of a fact of consequence more or less probable." Montgomery, 810 S.W.2d at 391 (discussing
relevance criteria for admission of Rule 404(b) evidence). Therefore, the State's proffer contains
circumstantial evidence upon which a rational jury could find beyond a reasonable doubt that Fischer
unlawfully appropriated the Cricket rifle with intent to deprive the owner of the property. See Tex.
Penal Code Ann. § 31.03(a) (Vernon Supp. 2006). Applying the appropriate abuse of discretion
standard, I cannot conclude that the trial court's threshold decision to admit the evidence of the rifle
theft was arbitrary or unreasonable, or falls outside the zone of reasonable disagreement. See
Montgomery, 810 S.W.2d at 391. Therefore, I would hold the trial court did not err in admitting the
evidence.

 Moreover, although the majority recognizes that in analyzing harm it is required to consider
the error "in the context of the entire record," it expressly declines to do so. The majority's
reasoning is that if it were to consider all of the evidence in the record in determining whether the
court's alleged error in applying Harrell was harmful, then "we defeat the purpose described in
Harrell" - "to prevent the introduction of irrelevant extraneous offense evidence." I disagree with
the majority's reasoning on two grounds. First, when the record as a whole establishes that the
evidence was relevant, I fail to see how the purpose of Harrell has been thwarted. (3)
 Second, the
logical conclusion of the majority's reasoning is that no error in admitting evidence would ever be
harmless because to so hold would always defeat the purpose of the evidentiary rule. This is simply
not the law.


 Phylis J. Speedlin, Justice



PUBLISH

1. The majority opinion relies on several punishment phase cases dealing with admissibility of extraneous offense
evidence. We note, as the Court of Criminal Appeals has noted, that while the standard of proof for extraneous offenses
is the same for both phases of trial, i.e., beyond a reasonable doubt, the relevancy of the extraneous offense evidence
serves a different purpose in each phase of trial. Mitchell, 931 S.W.2d at 954 (stating that while "... the use of extraneous
offenses during the punishment phase should be analogous to that of the guilt/innocence phase of a trial regarding burden
of proof [,] [t]he use of evidence of extraneous offenses during the guilt/innocence phase is used to prove 'motive,
opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident' [while] [d]uring the
punishment phase, evidence of an extraneous offense is offered to assist the trial court or the jury in determining
punishment"). 
2. It is also notable that Fischer does not challenge the legal sufficiency of the evidence to support his murder
conviction on appeal. 

3. I also question the majority's harm analysis in light of Rowell v. State, No. 01-97-01227-CR, 1999 WL 11737,
at *2 (Tex. App.--Houston [1st Dist.] Jan. 14, 1999, pet. ref'd) (not designated for publication), in which the court held
that erroneous admission of extraneous offense evidence is harmless where trial evidence is later admitted clearly linking
the defendant to commission of the extraneous offense.